

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. CV406-309 |
| | ) | |
| RANDY S. LENTZ and SCOTT T. BOWLIN, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court is Defendant Scott T. Bowlin's Motion to Dismiss[1] (Doc. 217) and the Government's Response (Doc. 221). Defendants argue that the length of time between their guilty pleas and sentencing has deprived them of their right to a speedy trial. After carefully balancing the four factors outlined in Barker v. Wingo, 407 U.S. 514, 530 (1972), the Court concludes that Defendants' Motion must be **DENIED**.

### INTRODUCTION

On September 15, 2006, Defendant Bowlin and Defendant Lentz were indicted by a federal grand jury for 104 counts of healthcare fraud and one count of conspiracy to commit

---

[1] Defendant Randy S. Lentz has filed a "Motion to Adopt Defendant Scott Bowlin's Motion to Dismiss." (Doc. 218.) After careful consideration, Defendant Lentz's Motion to Adopt is **GRANTED**. As a result, the Court considers the Motion filed by both Defendants.

healthcare fraud.[2] (Doc. 1.) On October 29, 2007, Defendant Bowlin pled guilty to conspiracy to commit healthcare fraud. (Doc. 161.) On November 7, 2007, the third day of his trial, Defendant Lentz also pled guilty to the conspiracy charge. (Doc. 172.)

While the presentence investigation report ("PSI") was being completed, Defendant Bowlin requested an extension of time to file his objections. (Doc. 174.) The Court granted Defendant Bowlin's Motion and gave him until January 28, 2008 to file objections to the PSI. (Doc. 175.) On March 24, 2008, Defendant Bowlin filed a Motion Objecting to Sentencing Procedures,[3] which asked this Court to grant his specific objections to the PSI.[4] (Doc. 185.)

On March 27, 2008, Defendant Bowlin and Defendant Lentz each filed a Motion for Release of Brady Materials, which asked for information regarding the methodology used by the Probation Office to calculate the amount of loss associated with Defendants' fraud scheme. (Docs. 186,

---

[2] Kim A. Bowlin and Rebecca J. Lentz were also named in the indictment. The Government has dismissed the indictment against Mrs. Bowlin (Doc. 166) and, as part of Mr. Lentz's plea agreement, has promised to dismiss the indictment against Mrs. Lentz.
[3] The two Defendants typically adopted each other's Motions. (See Docs. 187, 195, 198.)
[4] This Motion was in addition to the numerous objections Defendant Bowlin and Defendant Lentz filed with the Probation Office.

2

189.) Unsatisfied with the Government's response, Defendant Lentz filed a second Motion for Release of Brady Materials on March 28, 2008, requesting additional information concerning the calculation of the amount of loss.[5] (Doc. 190.) Next, Defendant Bowlin filed a "Motion for Entry of Order Granting as Unopposed His Motion Objecting to Sentencing Procedure" on May 9, 2008, followed by a 31-page Sentencing Memorandum on July 21, 2008. (Docs. 197, 200.) In addition to these Motions, Defendants submitted numerous items to the Court to aid it in arriving at an appropriate sentence. For example, the Court has received numerous personal letters, five news articles, and one book.[6] Finally, on June 22, 2009, Defendant Bowlin filed the Motion to Dismiss presently before the Court, arguing that the 19-month delay following his guilty plea has deprived him of his right to a speedy trial.[7]

## ANALYSIS

---

[5] On May 5, 2008, the Court denied Defendants' Motions for Brady Materials. (Doc. 196.)

[6] The Court was provided with a 183-page volume arguing that the American "government has made medical doctors scapegoats for the financial crisis of health care in the country and for the failed war on drugs." Ronald T. Libby, The Criminalization of Medicine: America's War on Doctors 181 (2008).

[7] Defendant Lentz filed his Motion to Adopt on June 23, 2009.

3

The Sixth Amendment guarantees a defendant's right to a speedy trial. This right extends through sentencing and requires a court to sentence a defendant without unreasonable delay. United States v. Campbell, 531 F.2d 1333, 1335 (5th Cir. 1976)[8] (citing Pollard v. United States, 352 U.S. 354 (1957)). The Court uses the balancing test outlined in Barker, 407 U.S. at 530, to determine if a defendant's right to prompt sentencing has been violated, United States v. Howard, 577 F.2d 269, 270-72 (5th Cir. 1978). In Barker, the United States Supreme Court identified four non-exclusive factors lower courts should consider when determining whether a defendant has been deprived of his right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in asserting his right, and (4) the prejudice to the defendant. 407 U.S. at 530. A court need not address the last three factors unless the length of delay under the first factor is presumptively unreasonable. United States v. Knight, 562 F.3d 1314, 1323 (11th Cir. 2009) (citing United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999)). However, when the Court assesses all

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

four factors, the weight of any single factor is not sufficient to find that a defendant was deprived of his Sixth Amendment right. Barker, 407 U.S. at 533. Also, a defendant is not required to demonstrate actual prejudice under the fourth factor if the first three weigh heavily in his favor. United States v. Schlei, 122 F.3d 944, 988 (11th Cir. 1997) (citing United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991)).

I. Length of the Delay

The Eleventh Circuit Court of Appeals has held that the failure to bring a defendant to trial within one year is presumptively unreasonable. Schlei, 122 F.3d at 987 (citing Ringstaff v. Howard, 855 F.2d 1542, 1543 (11th Cir. 1989)). While the Eleventh Circuit has not applied the one-year period in the sentencing context,[9] the Court will assume, arguendo, that a delay in sentencing of one year is presumptively unreasonable. In this case, approximately nineteen months have passed since Defendants pled guilty. Therefore, assuming the unreasonableness of a one-year delay, the Court must weigh the three remaining factors.

Defendants claim that nineteen months is per se "an unconstitutionally long time for sentencing" is incorrect.

---

[9] The Eleventh Circuit has previously found that a delay of three years was unreasonable. See Howard, 577 F.2d at 271.

5

(Doc. 217 at 8-9.) That conclusion rests on an analysis of all four factors, not simply the length of the delay. A presumptively unreasonable delay does not end the inquiry but compels consideration of the three remaining factors. In addition, the Eleventh Circuit has previously found lengthier delays, while unreasonable, do not weigh heavily in a defendant's favor. See Howard, 577 F.2d at 271 ("This case involves a three-year delay from when sentencing might have been imposed, but the length of delay itself suggests no prejudice."), Campbell, 531 F.2d at 1335 ("A delay of four years . . . was clearly unreasonable, but does not by itself require relief."). Therefore, assuming a nineteen-month delay is unreasonable, the Court finds it must inquire into the remaining three factors, but that this factor only slightly favors Defendants.

II. Reason for the Delay

The purpose and source of the impediment determines the weight accorded to the delay. Schlei, 122 F.3d at 987. Delays that are the result of tangential, frivolous, dilatory, or bad faith Government action weigh heavily in a defendant's favor. Id. (citing Untied States v. Loud Hawk, 474 U.S. 302, 315-17 (1986)). However, "delays that occur for valid reasons . . . will not be accorded heavy weight against the Government." Id.

In this case, the delay was not caused by the Government, but rather by Defendants' vigorous opposition to their PSIs and the complicated nature of the healthcare fraud. As noted above, Defendant Bowlin requested an extension to file his objections (Doc. 174) and filed a Motion Objecting to Sentencing Procedures (Doc. 185). Next, Defendants sought discovery concerning the Government's method of calculating the total loss. (Docs. 186, 189, 190.) Ultimately, Defendants objected to a total of fifty-six paragraphs of their PSIs.[10] In addition, Defendant Bowlin filed a 31-page Sentencing Memorandum attacking the PSI as procedurally improper and factually inaccurate. (Doc. 200.) Finally, the Court received numerous letters and news articles, and a book.

Of course, Defendants can and should vigorously advocate their position to the Court, but they cannot reasonably complain of delays caused by such intense advocacy. In this case, the delay in sentencing Defendants has been caused by the sheer volume of objections to the PSIs. That is, each filing by Defendants triggers an opportunity for the Government to respond. Then, the Court must find the time to review each filing and response,

---

[10] Defendant Bowlin objected to nineteen paragraphs and Defendant Lentz objected to thirty-seven.

7

conduct legal research, and reach a conclusion. Similarly, when the Court receives a letter, article, or book on a defendant's behalf, it must find time to thoroughly review that submission and decide what weight, if any, to accord it during sentencing. In this case, Defendants have submitted numerous documents concerning complicated sentencing issues. If Defendants want the Court to give each item the attention it deserves, it takes longer for the Court to arrive at a reasoned decision regarding an appropriate sentence. Therefore, the Court finds that any delay in sentencing in this case was not caused by the Government, but by the need for the Court to thoroughly review Defendant's numerous submissions and objections, along with the Government's responses, and apply them to a complicated case. Accordingly, this factor weighs heavily in the Government's favor.

III. Defendants' Diligence in Asserting Their Rights

A defendant's failure to diligently assert a speedy trial right makes it difficult for him to establish that he was denied that right. Howard, 577 F.2d at 271 (quoting Barker, 407 U.S. at 532). It is somewhat problematic to determine precisely when a defendant should begin to assert his Sixth Amendment right to a speedy trial. This is

especially true in the sentencing context because it is unclear at exactly what point that right has been violated.

As discussed above, Defendants argue that a delay of one year or more is presumptively unconstitutional. If that is Defendants' position, they should have sought to assert their rights at that point. However, Defendants waited another seven months before seeking dismissal on speedy trial grounds. Given this length of time, the Court finds that this factor slightly favors the Government.[11]

IV. Prejudice to Defendants

A defendant asserting a speedy trial violation must show that he was prejudiced by the delay. In Barker, 407 U.S. at 532, the Court identified three interests relevant to determining whether a defendant was prejudiced by any delay: (1) prevention of oppressive pretrial incarceration, (2) minimization of anxiety and concern of the accused, and (3) limitation of the possibility that the defense may be impaired. Of course, the Court in Barker created these interests based on the Government's failure to try a

---

[11] Defendants appear to contend that they asserted their speedy trial rights in a prior Sentencing Memoranda. (Doc. 217 at 10.) However, the Sentencing Memoranda never mentions the right to a speedy trial, but is simply a presentation of Defendant Bowlin's arguments concerning an appropriate sentence in this case. (Doc. 200.) Therefore, the Court finds that Defendants first raised their speedy trial rights in the Motion presently before the Court.

defendant in a timely manner, not on a failure to promptly sentence a defendant. It is obvious, therefore, that in this latter situation pretrial incarceration and impairment of the defense are not adequate concerns. Consequently, the only relevant interest in this case is the anxiety and concern of Defendants.

To that end, Defendants cite their "inability to eat and sleep and the disruption in [] relationships caused by the uncertainty of [their] situation." (Doc. 217 at 10.) In addition, Defendants aver that their "inability to find employment and provide for [their] family has been financially and emotionally crippling." (Id. at 11.) Specifically, Defendant Bowlin states that he cannot obtain employment of any kind because he is required to disclose his felony conviction. (Id. at 3.) Defendant Bowlin has had to sell his and his wife's car and purchase one used vehicle. (Id.) Also, Defendant Bowlin sold his home to avoid foreclosure and reduce credit card debt. (Id. at 4.) Defendant Bowlin contends that he has become suicidal due to the poor state of his finances. (Id.)

While the Court recognizes that these issues cause hardship on the Defendants and their families, that strain is caused by the looming incarceration rather than any delay in sentencing. Clearly, Defendants would face the

same difficulties regardless of the term of imprisonment each receives. Defendants have not argued that a noncustodial sentence is appropriate in this case. Therefore, the unanswered question here is not whether Defendants will be incarcerated, but for how long. In that regard, the hardships Defendants complain of would still be present whether Defendants face forty months or twenty months imprisonment.[12] There is no doubt that Defendants have been inconvenienced to some degree by the impending prison term. What is important is that Defendants have not shown that they have been prejudiced to any significant degree beyond the level of prejudice experienced by any convicted defendant facing a prison sentence. In other words, the prejudice Defendants complain of is the result of the impending incarceration, not the result of any delay in sentencing.

While not clear, Defendants may be arguing that these hardships are not caused by uncertainty as to the length of the sentence, but rather uncertainty as to the start of the sentence. The Court recognizes the Defendants may have difficulty in finding employment because they are unable to inform a potential employer when they will have to start

---

[12] The Court is using these numbers by way of example only, and is not taking a position on the proper term of imprisonment at this time.

serving their sentence. In addition, Defendants may face a longer period of hardship based on a delay in sentencing. However, the Court finds these arguments unpersuasive. If Defendants were prejudiced by the delay, they could have started serving their sentences immediately, rather than remaining free on bond. The time spent in custody prior to sentencing would be credited against Defendants' term of imprisonment, allowing them to serve their sentences and control this period of uncertainty. Therefore, after reviewing the alleged prejudice experienced by Defendants, the Court finds that this factor favors the Government.

## CONCLUSION

After balancing the four factors outlined in <u>Barker</u>, the Court concludes that Defendants were not deprived of their rights to speedy trials by the delay in sentencing. Accordingly, the Motion to Dismiss is **DENIED**.

SO ORDERED this 24th day of July, 2009.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA